The last case on the docket this morning is, and I hope I don't mispronounce anyone's names, but Goedelmann v. Willmont, No. 5-11-248. Ms. Johnson? Hi. Thank you, Your Honors. You may proceed. May it please the Court? I represent Karen Willmont in this appeal. I think the correct pronunciation is Goedelmann, but I'm not sure. I'm sorry, say it again. Goedelmann. Goedelmann. Okay. Goedelmann. Goedelmann. Goedelmann. Goedelmann. I knew it was a lie. Your Honors, we're here on a – it is our contention that the award of custody to the plaintiff was against her manifesto as the evidence. We believe the trial court erred in not considering all the relevant factors of custody. We believe they placed some undue weight on some of the factors awarding custody and placed too much weight on other factors awarding custody. Specifically, they placed a lot of undue weight on my client's mental health status. As there was no medical records entered into evidence, there was no psychological records into evidence other than testimony by the custody evaluator. None of the parties even testified as to that there were problems with my client's mental health. However, when the court gave custody to the plaintiff, it actually stated that they had found significant emotional and psychological issues with the defendant. That being said, the only testimony regarding her psychological issues were from the custody evaluator. There was not enough weight put on factors such as child abuse or domestic violence towards the child. There was significant testimony – Was there any founded complaints about domestic violence? There were actually domestic violence charges against both parties. And only – were they founded against the father or only against the mother? The charges were dismissed. All of them? Against everybody? Yes. So what's their relevance? Well, the relevance is the allegations of child abuse. There was no domestic violence. There were domestic violence between the parties, and actually it was a volatile relationship between the parties. But there were multiple allegations of child abuse brought out during the trial court. Testimony by the defendant that she had taken pictures of the child, that there were bruises of the child, that she had – But those photos didn't get into evidence. They didn't get into evidence. Because they weren't disclosed. They weren't disclosed, Judge. However, the custody evaluator saw those photos, and the custody evaluator's report was put into evidence without direct testimony. She actually testified as to what those pictures showed, although those photos weren't allowed into evidence after she testified that they didn't show physical abuse. She also testified that she was not an expert in medical evidence. So it's our contention that once the custody evaluator's report was put into evidence, which was done without any direct testimony, if I might add – But there was cross-examination that went beyond perhaps what – Correct, Judge. And once that was put into evidence, it's our contention that they opened the door to allow those photos to come in. As she testified to the fact that those photos didn't show any physical abuse of the child. It's our contention that my client – And I guess their argument is that we didn't disclose the photos prior to. They knew of the photos. They knew that the photos had been shown to Ms. Atkerson. They knew the photos had been shown to DCFS. It wasn't a big surprise that these photos existed.  Were the photos put into the record as an offer of proof? No, Judge. So we don't have any way to – they're not in the record now. We don't have any way to look at them to see if we think they'd have made a difference or – No, they were not put in as an offer of proof. How are we supposed to evaluate whether anybody was prejudiced by not introducing the photos? Well, there was testimony given by the defendant regarding the photos. She had said that every time she came back, she took pictures before and after. She testified that she had saw bruising on the child, that she had saw a black eye on the child. Okay. I mean, she testified as to what was in the pictures, although the court would not allow the pictures in the evidence. Okay. Now let me ask you another question. You said a couple times in your brief that the custody evaluators did not give direct testimony. Okay. I'm just trying to figure out what happened here. Did the judge say, I'm going to call the custody evaluator as a court's witness, allow her to report into evidence, and now you can both question her on cross-examination? Is that what happened? No, no. Actually, the plaintiff's counsel called her as a witness and then said, is this your expert opinion, is this your report, are you Dianna Ackerson? I'm moving to admit Petitioner Exhibit 1, which was her report. And then said no further questions? Correct. Isn't that direct examination? Well, it doesn't lay a foundation, of course, for any of her reports. And the defendant's counsel actually objected and said that we need direct testimony. Her direct testimony would be much better than anything that she put in the report. Did you object to the introduction of the report? Yes. Okay. And is that an issue that you've raised on appeal, that the report should not have been admitted? We actually raised it that he actually took undue weight to her report and her testimony. He placed undue weight in granting custody to the plaintiff. But the specific issue that the judge erred by overruling her objection to the admission of the report is not raised on appeal? I believe it is not. Okay. Correct.  The plaintiff's attorney relied on Wilson v. Clark. When we voiced that objection that we wanted her to directly testify, we relied on Wilson v. Clark. In Wilson v. Clark, hospital records were admitted without a foundation, and they allowed an expert to disclose their opinion without discussing the underlying facts. It's our opinion that that didn't mean that direct testimony wasn't warranted in that case. In Hispat v. Peters, a second district case, they ruled that the expert testimony required an adequate foundation. There was no foundation laid. Now, in the plaintiff's brief, they said that we didn't object to a lack of foundation of the custody evaluator's report. However, if a person doesn't directly testify, it's difficult to object to a lack of foundation. I mean, defendant's counsel objected to a lack of direct testimony. Also, they admitted her C.D. into evidence, and there was no foundation laid for that either. There's also another case where People v. Safford, this is a 2009 first district case, states that when an expert testifies, they must also lay a foundation, and that was a fundamental right of the opposing party, that they must lay a foundation. It's almost as if she came in and said, here, you just take my word for everything that I'm saying in this report. The trial court said they weren't bound by the report. However, we believe they did place undue weight on the report. She was the only person that testified regarding the defendant's psychological or mental health issues. Even the plaintiff didn't say that these psychological or mental health issues that, these alleged psychological or mental health issues that the defendant had, even the plaintiff didn't testify that these affected the child. No one has in the custody evaluator discussed anything, any of these issues. One of the plaintiff's case that he cites is in regarding marriage of stone. It's a first district case. And the court said that parental conduct that doesn't affect the child should not be considered. The conduct that the evaluator was talking about is where the defendant had scratched her arm, harmed her eye, and was taken to Gateway Hospital back in 2009. Nowhere did anybody say this affected the child in any way. There was also some talk about the custody evaluator saying she overdosed on some pills. However, no one else testified that she overdosed on pills. In fact, there was testimony that she didn't overdose on pills. The defendant testified that that was not true. The plaintiff's counsel actually questioned the defendant's ex-husband and never asked about this incident. But when the plaintiff testified, he stated that the defendant told him she went to Gateway without overdosing on pills, but before that she went to her ex-husband's house and he made her throw up. But oddly enough, the plaintiff calls her ex-husband and doesn't even ask him a question about his overdosing. And so the whole issue of this overdose was not even the only person that testified to that was the custody evaluator. Her ex-boyfriend testified that he had not heard of her having an overdose, and even her mother testified that she didn't overdose. So the only thing that was actually put into evidence that the defendant admitted to was that she scratched her arm with a knife and was taken to Gateway in 2009. And yet the trial court found that she had significant emotional and psychological issues. They also said a critical factor was stability of the parents. And the big problem that we have with that is the judgment order where he granted custody to the plaintiff alludes to the fact that he has a better living arrangement and that he has stable employment. And the problem with that is those are financial considerations. In fact, financial considerations really aren't a relevant factor when you're looking at the best interest of a child. My client testified that she had an apartment, that she was a stable person in the child's life. The custody evaluator actually said that she was the predominant person in the child's life from day one. There was testimony of her friends and her mother that she was a loving and caring mother. Stability and security should not have been a factor when the court was looking at it as a living arrangement or as whether or not he could provide stable employment. Could we back up a little bit? When it said scratched herself with a knife, you know, probably a lot of Boy Scouts do that when they first get their pocketknife. But they're not trying to commit. Did they put her in and claim that she's alleged to have committed suicide or what? What's that scratch? Was that cut or was a scratch and a cut to me sound a little different? Well, they did put her in. Is there any place in the testimony that there was a cut, just a scratch? That's what the defendant testified to, that she just scratched her arm with a knife. She did spend one night. Did it say where on the arm? No, it didn't, and I don't recall if it did. I don't think it did. However, her mother testified that she saw her a few days later and there was nothing on her arm. Okay. At least in the briefs, she spent one night at Gateway. And does the record show what Gateway is? Gateway Regional Hospital. I believe it was for mental health-related issues. She testified her diagnosis was an addictive relationship, referring to the relationship that she had with the plaintiff, which she no longer has. Getting back to the photos that were barred by the trial court, as I said before, the expert had testified regarding those photos, saying that they didn't show abuse in what she saw in the photos. And she had actually put that report in, saying that she had seen all these photos. That would be very helpful if we had an offer of proof made so we could see them. But the defendant did testify that there were seven incidents of red cheeks, where she described that the plaintiff actually would rub the child's cheeks so hard, called it German washing, and also incidents of bruising and even once a black eye. There was testimony by the defendant's ex-boyfriend who she was living with for a short period of time that also said the child came back from visitation with his father with a black eye. There was testimony by his mother that the one time she was at the house and the child was slapped and the child was only three months old, and the defendant had called back to the plaintiff and said, did you just slap the child? And he's replied, yes. So there was testimony. All of the pictures weren't admitted. She did testify as to what the pictures elicited, and I don't think that was any surprise to the plaintiff. There was also a big adieu about visitation interference. However, these parties had been doing visitation back and forth for over a year. They had been separated for about a year. And there was only two issues, I believe, that the defendant testified to. One was Christmas Day over Christmas Eve that they argued about, and the other was when the defendant believed that the parties agreed to go to the doctor's office, and when she talked to the plaintiff about it, he said go ahead and take the child, and then she took the child and he had called the police. So there was in the judgment order they had alluded to that she was interfering with some of his visitation. However, that wasn't the case. She explained those away in the trial. There was also testimony by the defendant's sister that the plaintiff had referred to the child as a little bastard on two occasions. There were DCFS reports. Of course, they were unfounded, but the defendant testified that the plaintiff had been reported to DCFS for this child abuse by three different doctors, two times by the police and one time by a daycare provider. The plaintiff, however, testified he had only been indicated, or not indicated, excuse me, had been investigated three times. The plaintiff had testified he didn't know where these bruises were coming from, that on one occasion the car hit the child in the head and he had a red mark from that. However, as I said, even the defendant's ex-boyfriend testified in these pictures that she would take before her doctor, and he stated that he had seen the bruising on his inner thighs, he had seen a black eye when the child came back from visitation. The gist of that is that the trial court didn't consider any of that when they made their ruling. They stated that it was just my client making these false allegations, or that my client was just not, that the custody evaluator's determination that these weren't abusive. You'll have five minutes on rebuttal, Ms. Johnson. Thank you. Mr. DeLong? Good morning. May it please the court, Mr. Johnson. I represent Mark Gettleman in this case, and this courtship firm of the trial court's decision granting custody to the father, as this was in the best interest of the child with proper balancing of the factors that the court had to determine, according to 750 ILCS 5 backslash 602. The court did not place an undue weight on the father's secure and stable environment. Much as made by mother at this point, the court considered where father lived. The court did address that it was critical to the decision, the issue of stability, but went straight into talking about Karen's conduct outlined in the report, her testimony, Mark's testimony, suicide attempts. Those are the issues that the court was incorporating into the word stability, not just simply where father lived. The court also did not place undue weight on the testimony of the agreed custody. The court stated in the honorable Judge Becker's order that he did not have to follow the custody evaluator. The custody evaluator testified in her report that she felt there should be very limited visitation with mother until psychological treatment. The court granted mother four days, one week of visitation, two days the next, which was very liberal visitation. As to the photographs, the court properly barred the photographs. There was no testimony that which photographs the evaluator reviewed. The custody evaluator simply stated during cross that she reviewed many photographs and a video, not which specific ones. Mother was not able to testify as to which ones. She just simply said that I gave them to the custody evaluator. The court had quite a bit of evidence in front of them to make this decision. One of the critical issues in this case is the interaction, the interrelationship of the child with its siblings. Mother has a 17-year-old son from a previous relationship. Father has a 14-year-old son from a previous marriage. Mother's own son was there to testify for father and testify that he was able to see the minor child when the minor child was with father, not with mother. He testified that he had only seen mother and child together one time since they had moved out, and that was so that mother could show photographs. Father's 14-year-old son also stated that he got to see the minor child every weekend when he was with father. So, clearly, the two siblings from both parties were able to see the minor child when he was with dad. The mental health issues, there's more to the mental health issues than just what Donya Adkerson reported. Mother was admitted to the hospital, that was clear, in 2009 for, as father stated, cutting her arm, mother stated scratching her arm with a knife. Nonetheless, she was hospitalized in Gateway. There was conflicting reports as to what the diagnosis was. Mother testified that it was an addictive relationship. On cross-examination, she admitted interrogatory responses, she stated postpartum. And Donya Adkerson testified that she reviewed records that said rule out bipolar. There was also testimony about a previous suicide attempt involving an overdose. Father testified that mother had pulled him of a prior overdose. Mother denied that. Donya Adkerson, the evaluator, had reviewed a record that stated that there was a prior suicidal attempt. Donya Adkerson also administered an MMPI-2 test, which she stated suggested serious lack of personal insight and possibility of serious psychological disturbance from mother. The court could not simply ignore the mental health issues, as mother would like you to do now. Another... It didn't really affect the court's ruling about the visitation. She got significant visitation, did she not? I agree with you, Your Honor. The custody evaluator essentially stated that she should only have limited supervision until she sought out psychological help. But Judge Becker, in his ruling, stated that the child had not been harmed yet and that he was sufficiently satisfied that neither party intended to harm this child. It did give her very liberal visitation effect, approximately six days every 14 days. The custody also should have been granted to father with fostering a close and continuing relationship with the other party. However, mother was charged with visitation interference twice and pled guilty to one of those. Father was never charged. The Facebook photos and commentary were admitted into evidence, demonstrating that mother stated she wanted to keep the father away from the child. There was much issue with this domestic violence.  Mother came home from the bar. There was an argument. Mother testified that father punched her in the face. The police were called. Mother was arrested. The father stayed with the child. Neither of these people were ever convicted of a domestic... As to the physical abuse to the child, Judge Becker summed it up that she was obsessed with the thought of physical abuse. Donya Atkerson, the custody evaluator, believed that mother was either maliciously fabricating counts of abuse or suffered from a delusional disorder causing her to believe there was abuse. Nonetheless, what really troubled the custody evaluator was if she really believed there was a physical abuse, why did she maintain that she wanted to get back together with father and bring the child back into that situation? Each of the factors weighed in favor of father being granted custody in this case. The photographs were properly barred as they were not even disclosed or even talked about until after father's case in chief and after father had dismissed witnesses. Nobody could be there to testify to what specifically was in the photographs. There were some photographs admitted in the evidence that mother claimed showed abuse. The judge was free to look at those and see the rosy red cheeks and make a determination from there. These matters are all reviewed under an abuse discretion procedure. The evidence weighed in favor of custody of the father and I think was very generous in granting quite a bit of visitation to mother. As such, the court should affirm the trial court's ruling. Let me ask you a question. I appreciate both counsel focusing on the child of the best interest, but the other issue is no attorney fees were awarded, yet the trial court specifically found that there's a significant income disparity between the parties. They think the trial court was in error in not awarding fees, notwithstanding also that the fees were not requested, and she filed a financial affidavit the day of the hearing. I understand that. Okay. And that would be the argument, Your Honor, is that the issue wasn't for the court to award attorney fees. She also never testified that she was unable to pay the attorney fees. She did testify that she paid a portion of a comp settlement for attorney fees, but there was no testimony that she was unable to pay these fees. Yes, there was income disparity. However, if this would have been before the court, father's counsel could have asked different questions. It was specifically objected to when they filed their answer to the paternity petition the day of trial because I believe there was a request for attorney fees, which there was not. But the court's order does say attorneys' fees shall be paid each by their attorneys, so by their own, by the own party. So the court considered fees as an issue. I believe it did, Your Honor. Thank you. Okay, thank you, Ms. Johnson. Any rebuttal? No. Again, when plaintiff's counsel speaks of parents' conduct that the court alluded to in these suicide attempts, most of that, majority of that came from the custody evaluator's report. There was no other testimony supporting a suicide attempt other than what the custody evaluator alluded to except for the scratch and the one night at Gateway. I heard Mr. DeLong use the phrase, agreed custody evaluator. How was the custody evaluator determined to pick? I was not the counsel of record at the time, Your Honor, but I believe that there was an agreed order entered that she would be the custody evaluator. I assume it was for lack of getting a guardian of item appointed. And did that order set out, you know, whether or not the report would be submitted to the court, those kinds of things? I don't believe that it did. Okay. The father also testified, or the evaluator testified that the father heard that he would share custody with the defendant and that he had no concerns over her mental health issues. So, again, in Reedy Marriage of Stone, which plaintiff's counsel cited in his brief, if the conduct of the parent didn't affect the child, then it shouldn't have been considered. If Ms. Anderson would have directly testified, she could have said what pictures she had observed. The fact that she didn't testify, she just put her report into evidence. Her report stated that she viewed still pictures and video provided by Ms. Loma. The defendant testified that she gave all 250 pictures to Ms. Anderson. The defendant's son, who's 17, did testify that he saw the child more frequently with the plaintiff. However, he also testified that he did like seeing his mom under oath. The domestic violence between the parties, again, had no effect on the child. There was no indication that this had any effect on the child, so I don't think it was a relevant factor for the court to look at. Ms. Anderson, who stated that her diagnosis that she read on the medical report was rule-out bipolar, again testified on cross that she was not an expert in reviewing medical evidence. She testified to that twice. So she's testifying to what someone's diagnosis is, but she's not an expert in medical evidence. And as far as the attorney's fees, the court can award attorney's fees and attorney actions pursuant to the Parentage Act. And the pleadings were admitted over the objection of plaintiff's counsel, and the judge had said on the record that he would decide the fees when he heard the whole thing. And that was actually a quote of the trial court. There was testimony that the plaintiff's income was $39,000. There was testimony that the defendant's income was $230 a month and $350 a month in food stamps. The plaintiff actually made seven times greater the income than the defendant. And I believe that was one of the reasons that child support wasn't awarded due to disparity in incomes. I have nothing further. All right. Thank you both very much for your briefs and your arguments. Appreciate your time and effort. We'll take this matter under advisement.